IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES KASPRZYK, ) | |
| ) | Case No. |
| Plaintiff, ) | |
| ) | Judge |
| v. ) | |
| ) | Magistrate Judge |
| MCDONALD'S CORPORATION, ) | |
| ) | Jury Trial Demanded |
| Defendant. ) | |

## COMPLAINT

Plaintiff, James Kasprzyk, by and through his attorneys, Pedersen & Weinstein LLP, for his Complaint against Defendant, McDonald's Corporation, states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., to challenge Defendant's unlawful discrimination against him based on his age.

## JURISDICTION AND VENUE

2. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff, James Kasprzyk, was formerly employed by Defendant as a Senior Director of Insurance. Plaintiff began his employment with Defendant in March 1999 and was unlawfully terminated in February 2012. Plaintiff was 58 years of age when he was fired.

5. Defendant, McDonald's Corporation ("McDonald's" or "Defendant"), is a global

foodservice retailer with more than 34,000 local restaurants in over 100 countries. McDonald's employs 1.8 million employees and in 2012, it had gross revenues of $27.5 billion. At all times relevant to this Complaint, Defendant employed more than twenty employees and was engaged in an industry affecting commerce.

## FACTUAL ALLEGATIONS

*Background*

6. When Plaintiff joined McDonald's, he brought with him approximately 15 years of insurance and risk management experience working with large, multi-national companies, including Waste Management, Inc. where he was the Director of Worldwide Insurance Programs, and Kraft, Inc. Plaintiff also had extensive educational and licensing credentials, including an undergraduate degree in economics, a master's degree in business administration degree (MBA), an associate in risk management (ARM) designation, and the prestigious chartered property and casualty underwriter (CPCU) license. In addition to his work experience, Plaintiff has also taught insurance classes at the college level and often spoke at industry seminars.

7. Given his background and talents, Plaintiff had every reason to anticipate a successful and rewarding career with Defendant. Indeed, throughout his employment, Plaintiff discharged all duties assigned to him competently and enjoyed an excellent reputation with regard to the quality of his work and his conscientious devotion to his job. Plaintiff consistently received positive performance reviews, was promoted from a director level position to senior director position, and never had any reason to think that his performance or behavior was unacceptable, or that his job was in jeopardy.

*Defendant Fired Plaintiff Because Of His Age*

8.      Notwithstanding his impressive job performance, Defendant abruptly terminated Plaintiff in February 2012 because of his age.

9.      Defendant claims it fired Plaintiff for a reason other than age, namely because of an article in a trade journal written about Defendant in which Plaintiff was interviewed. Defendant's claim is pretextual for four key reasons, as set forth below.

10.     First, Defendant's claim is pretextual because Defendant explicitly gave Plaintiff permission to participate in the interview and article.  More specifically, Plaintiff received advance permission from his direct supervisor, Larry Long ("Long"), the Vice President of Insurance, Risk Management, to participate in the interview.  Plaintiff also received permission from Defendant's corporate communications department to participate in the article.  If Defendant honestly was concerned about Plaintiff saying anything inappropriate or sharing any sensitive information, it had the opportunity to prevent him from being interviewed or participating in the article.

11.     Second, Defendant's claim is pretextual because Defendant had advance notice of the substance of the article before it was published.  More specifically, Defendant received a written copy of Plaintiff's interview answers before the article was published and was explicitly asked by the trade journal editor for any revisions it wanted to make to the answers.  Defendant ignored that request, as well as a subsequent request from the trade journal editor reminding Defendant of the opportunity to make revisions.  Accordingly, if Defendant honestly believed that Plaintiff had said anything inappropriate or shared any sensitive information, it had the opportunity to prevent the article from being written or it could have made changes to it.

12.     Third, Defendant's claim is pretextual because Plaintiff did not actually say

3

anything inappropriate or share any sensitive information in the interview. Quite to the contrary, the information he shared was standard fare for the journal in question and/or was publicly available already. Indeed, the editor of the journal was shocked to learn that Defendant had used it as a reason to fire Plaintiff, as were other colleagues of Plaintiff who work in the industry. The trade journal editor also informed Plaintiff that the article received no public commentary, as articles occasionally did, further reflecting that it was uncontroversial.

13. Fourth, Defendant's claim is pretextual because Defendant condones far worse behavior by its employees, further undermining any claim that it truly believed Plaintiff did anything wrongful. For example, for years, Defendant condoned inappropriate behavior by an employee who engaged in misconduct such as calling Defendant's CEO "Hitler," displaying a dart board with a picture of Defendant's treasurer on it, and openly sleeping during work hours.

14. For further example, for years Defendant has condoned an illegal insurance scheme in which a company affiliated with McDonald's, HAVI, manufactures and sells McDonald's happy meal toys and receives insurance coverage for the happy meal toys from another company affiliated with McDonald's, McDonald's Owner/Operator Insurance Company, Ltd. ("MOOIC"). MOOIC is owned by various owner-operators and is controlled by McDonald's employees, including Long. Plaintiff was on the board of directors of MOOIC, but was not actively involved in the activities of the company. In contrast, Plaintiff's direct supervisor, Long, was actively involved and negotiated the insurance coverage provided to HAVI.

15. The insurance coverage provided to HAVI – purportedly intended to provide "buy back" coverage to individual stores in the event a happy meal promotion underperforms – is illegal as it is not negotiated at arms' length, does not truly involve any transfer of risk, and the

4

premiums are not negotiated in Bermuda where the company is licensed. The conduct at issue violates insurance law and federal income tax law.

16. The arrangement is so obviously unlawful that Long often remarked that the insurance company, MOOIC, was not really an insurance company and they were just moving money from one pocket to another inside the McDonald's system, or words to that effect. Long even joked about spending time in prison if the scheme was ever discovered.

17. Accordingly, Defendant's claim that Plaintiff engaged in wrongful conduct or that it honestly believed he did is unpersuasive given the far more egregious and illegal conduct Defendant tolerates by its employees, including the sham insurance scheme.

18. As further evidence of age discrimination, Defendant replaced Plaintiff with a younger, less qualified person. Indeed, to Plaintiff's knowledge, his replacement has little, if any, experience as an insurance manager and certainly no experience managing the global property and casualty risk management and insurance programs for a Fortune 500 corporation.

***Defendant Violated ERISA***

19. Defendant also terminated Plaintiff's employment to prevent him from receiving the significant retirement benefits he would have received when he retired. Plaintiff was eligible to retire at the time of his termination, but was prevented from doing so by his abrupt termination.

20. Defendant's conduct in this regard violates ERISA.

***Defendant Failed To Exercise Reasonable Care To Prevent And Correct Unlawful Conduct***

21. Defendant's management directed, encouraged, and participated in the above-described unlawful conduct.

22. The discrimination described above was consistent with Defendant's standard

5

operating procedure.

23. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

*Plaintiff Timely Filed A Charge Of Discrimination*

24. Plaintiff timely filed a charge of age discrimination with the EEOC. Plaintiff subsequently requested and received his Notice of Right to Sue so he could pursue his claims in federal court.

*Plaintiff Suffered Damage*

25. Plaintiff has lost wages, compensation and benefits as a result of Defendant's unlawful conduct.

26. Plaintiff's career and reputation has been irreparably damaged as a result of Defendant's unlawful conduct.

27. Plaintiff has have incurred attorneys' fees and costs as a direct result of Defendant's unlawful conduct.

*Liquidated Damages*

28. Defendant acted and/or failed to act with malice or willfulness or reckless indifference to Plaintiff's rights. The conduct alleged herein was willful and wanton and justifies an award of liquidated damages.

## COUNT I

### AGE DISCRIMINATION IN VIOLATION OF ADEA

29. Plaintiff realleges paragraphs 1 through 28 and incorporates them by reference as paragraphs 1 through 28 of Count I of this Complaint.

30. The Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 et seq.,

("ADEA") makes it unlawful for an employer to fail or refuse to hire, discharge, limit, segregate, or classify its employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

31. By the conduct as alleged herein, Defendant subjected Plaintiff to age discrimination in violation of ADEA.

32. Defendant's conduct constitutes willful age discrimination against Plaintiff.

## COUNT II

**VIOLATION OF § 510 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT**

33. Plaintiff realleges paragraphs 1 through 32 and incorporates them by reference into Count II of this Complaint.

34. Under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140, it is unlawful for an employer to discharge, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan.

35. Plaintiff was a participant or beneficiary of Defendant's benefit plans.

36. Defendant terminated Plaintiff's employment with the intent of interfering with, preventing or retaliating for the use of such benefits.

37. By its conduct alleged herein, Defendant violated ERISA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court find in his favor and against the Defendant as follows:

a. Declare that the acts and conduct of Defendant violate the ADEA and ERISA;

  b. Award Plaintiff the value of all compensation and benefits lost as a result of Defendant's unlawful conduct;

  c. Award Plaintiff the value of all compensation and benefits he will lose in the future as a result of Defendant's unlawful conduct;

  d. In the alternative to paragraph (c), reinstate Plaintiff with appropriate promotions and seniority and otherwise make Plaintiff whole;

  e. Award Plaintiff liquidated damages;

  f. Award Plaintiff prejudgment interest;

  g. Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

  h. Award Plaintiff such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: May 1, 2013

        Respectfully submitted,

        By:
         */s/Erika Pedersen*
         Attorney No. 6230020

Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
55 E. Jackson Blvd.
Suite 510
Chicago, IL 60604
(312) 322-0710
(312) 322-0717 (facsimile)

8